UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MONWELL DOUGLAS,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )   No. 2:16-cv-00368-JMS-DLP
                                          )
FAITH REEVES Casework Manager (CWM),      )
                                          )
                    Defendant.            )


**Entry Granting Defendant's Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the motion for summary judgment filed by

defendant Faith Reeves, dkt. [99], is **granted.**

## I. Background

Plaintiff Monwell Douglas was at all times relevant to this action incarcerated at the

Wabash Valley Correctional Facility ("Wabash Valley"). After the Court screened the amended

complaint, the only remaining defendant is Casework Manager Faith Reeves. *See* Screening

Entry dkt. 38. The Screening Entry described Mr. Douglas' claim as follows:

> The plaintiff alleges that Casework Manager Reeves has denied him
> "entitlements." He alleges that Ms. Reeves refused to hire him for high paying
> jobs for which he was qualified. He filed grievances complaining about Ms.
> Reeves' actions. The plaintiff alleges that as a result of a disciplinary charge
> brought against him, he was found guilty and lost his housing assignment, lost his
> job, credit class, earned credit time, housing position, and future job positioning.
> The finding of guilt was later reversed, so when he was returned to his housing
> unit he made requests of Ms. Reeves which she denied. The plaintiff then filed
> classification appeals which were granted. He alleges that Ms. Reeves "took
> offence [sic] to my reversal and she began a chain of retaliatory acts that are all in
> connection to the initial false imprisonment sanction." [Dkt. 37, p. 14.]. After his
> appeal was granted, he requested that Ms. Reeves grant him his previous job or a
> high level position, his previous cell, full payment for the 45 days he was housed
> in a different unit, and a work benefit grade payment for every day he was not

given a replacement position. Ms. Reeves granted him $15.00 and a remedial position at the same pay. The plaintiff appealed this decision to the classification director and the refusal to reclassify him to a different status was reversed. To the extent the plaintiff alleges that Ms. Reeves refused to give him a better job and denied him other benefits because of his complaints against her, this claim of retaliation under the First Amendment **shall proceed.**

Dkt. 38 at 6.

Ms. Reeves seeks resolution of Mr. Douglas' claim of retaliation through the entry of summary judgment. Dkt. 99. Mr. Douglas has opposed the motion, dkts. 112-116, Ms. Reeves replied, dkts. 117-118, and Mr. Douglas filed a surreply, dkt. 119.

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp*., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Douglas as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Ms. Reeves was the case worker for the offenders on the right wing of P Unit at Wabash Valley at all times relevant to the claims asserted by Mr. Douglas. P Unit is divided into a right wing and a left wing. As the case worker for the right wing of P Unit, Ms. Reeves is responsible for the daily affairs of approximately 100 offenders. Her duties include job assignments and distributing all types of payments related to jobs and job eligibility.

Jobs at Indiana Department of Correction ("IDOC") facilities are privileges and are highly sought after. There are four classifications of jobs—A, B, C, and D, with "A" jobs paying the most and "D" jobs paying the least. In addition, under IDOC policy, an offender is entitled to a pay benefit for every day he is eligible for a job but no job is available. The pay for each of these days is set by IDOC policy.

Mr. Douglas was given a "C" job as a wheelchair pusher on November 30, 2015. On or around February 16, 2016, however, Mr. Douglas was restricted to his cell on the left wing of P Unit because he was accused of threatening a nurse. Mr. Douglas was found guilty of threatening

the nurse at a disciplinary hearing on February 24, 2016, and was placed in segregation and lost his job as a result. Ms. Reeves was not involved in the disciplinary hearing or the placing of him in segregation, although she was notified of his restricted housing.

Mr. Douglas remained in segregation until his conviction was overturned on administrative appeal on March 14, 2016. Ms. Reeves was not involved in the appeal process. Mr. Douglas was placed by the facility into a cell on the right wing of P Unit on March 23, 2016.

According to IDOC policy, jobs are not held for offenders while the offender is in segregation. Dkt. 101-4 at 16-17, IDOC Policy, Disciplinary Code for Adult Offenders, 02-04-101 (effective June 1, 2015). Nevertheless, if the guilty finding is reversed, IDOC policy requires that the offender "shall be returned to the previous assignment eligibility status as soon as possible and shall be given priority for a work assignment," shall receive back-pay at the same wage rate for the time from the removal from the work assignment until the disciplinary hearing, and be paid for each day the offender is eligible for a job but no job is available. Dkt. 101-4 at 43-44; dkt. 101-2 at 10-11, IDOC Policy, Offender Work Assignment and Pay Schedules, 02-01-106, Attachments I and II.

Ms. Reeves does not select the initial cell assignments for offenders that are moved into the right wing of P Unit from segregation. As noted, prior to being placed in segregation, Mr. Douglas was housed on the left wing of P Unit. At the time Mr. Douglas came to the right wing of P Unit, that wing had nine job positions within the control of Ms. Reeves: six sanitation jobs; one recreation job; one laundry job; and one wheelchair pusher job. There were also four CAB Area jobs that were allotted to the Unit as a whole, but offenders for those jobs are not selected by Ms. Reeves.

When Mr. Douglas arrived on the right wing of P Unit after segregation on March 23, 2016, his job as a wheelchair pusher had been filled. Only one wheelchair pusher job was required at that time because the Unit only had one inmate on the left wing that required a wheelchair pusher. There were no jobs available on the right wing of P Unit from March 23, 2016, until April 14, 2016, the date offender Horace Laws was released and left another open "C" job in the laundry area. When Mr. Douglas arrived on the right wing of P Unit, he requested his old job back or a higher class job than "C". Ms. Reeves told Mr. Douglas that no jobs were available on the right wing of P Unit and that he would be informed when a job became available. Mr. Douglas was also told that he would receive any pay that he was owed according to IDOC policy.

Ms. Reeves spoke with the case worker for the left wing of P Unit to ask if any jobs were available for Mr. Douglas. No jobs became available on the right wing of P Unit, but in April 2016, a job ("C" class, recreation) became available on the left wing of P Unit. Once Ms. Reeves was informed of the available position on the left wing of P Unit that the left wing's case worker was willing to allow Mr. Douglas to fill, she offered the job to Mr. Douglas. Mr. Douglas accepted and was awarded the job on April 20, 2016. On April 22, 2016, Mr. Douglas was moved to the left wing of P Unit, where the job was located.

On April 19, 2016, Mr. Douglas received $2.03 and $9.45 in back-pay. Mr. Douglas also received $5.50 on April 19, 2016, and $6.50 on May 20, 2016, for time he was eligible for a job but no job was available, as required under IDOC Policy.[1]

---

[1] Mr. Douglas' assertion in his reply that he was due, in addition to back pay, thousands of dollars for attorney fees is frivolous. Dkt. 112 at 9-10.

Once Mr. Douglas was transferred to the left wing of P Unit, Ms. Reeves was no longer Mr. Douglas' case worker and although she saw Mr. Douglas in the left wing, she had no control over his job placement, pay matters, or cell location.

**March 30, 2016 Grievance**

On March 28, 2016, Mr. Douglas filed his first informal grievance against Ms. Reeves for not giving him the same position or a higher paying job; for not giving him pay from February 24, 2016, to March 24, 2016; and for not giving him pay that he would have received for a "C" class job for the time he was eligible for work but no job was available. Dkt. 101-12. On March 30, 2016, he filed a formal grievance against Ms. Reeves alleging the same arguments and seeking the same relief. Dkt. 101-13. The grievance was returned and rejected because it concerned a classification or disciplinary action. Dkt. 101-14.

**March 30, 2016 Classification Appeal**

Offenders at facilities receive annual classification reviews. Such reviews determine an offender's security level. On March 18, 2016, Mr. Douglas received his annual classification review that determined him to be a level 4 offender. Ms. Reeves did not perform this classification review.

On March 30, 2016, Mr. Douglas submitted a classification appeal challenging his EPRD (earliest possible release date). The appeal was granted. The appeal noted that Mr. Douglas' EPRD was under 15 years and, as such, per policy, his security level should be updated by Unit Team staff. Unit Team "staff will process a new classification designation as their operational needs allow." Dkt. 101-15. The change in security level from level 4 to level 3, however, does not affect an offender's eligibility for a job or pay.

In the months following March 30, 2016, Mr. Douglas submitted ten additional grievances/classification appeals against Ms. Reeves. Dkt. 101-16.

**B. Analysis**

To avoid summary judgment on his retaliation claim, Mr. Douglas must offer evidence tending to show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation omitted). If Mr. Douglas shows that "an improper purpose was a motivating factor, the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). "If the defendant carries that burden, the plaintiff must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that retaliatory animus was the real reason for the decision." *Id.* "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.* "[I]nferences resting on conjecture are not reasonable." *Schroeder v. Drankiewicz,* 2013 WL 1222750, 519 Fed. Appx. 947, 951 (7th Cir. March 26, 2013).

It is undisputed that a prisoner's grievances are protected by the First Amendment. *Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012); *Pearson v. Welborn,* 471 F.3d 732, 740 (7th Cir. 2006). Mr. Douglas, however, stumbles at the second element of his claim of retaliation.

It is undisputed that for months *after* Ms. Reeves allegedly denied his requests related to his job and cell placement, Mr. Douglas continued to file additional grievances against her. He cannot show that "he suffered a deprivation that would likely deter First Amendment activity in

the future" because his First Amendment activity was not, in fact, deterred. If one's First Amendment activity is not deterred, alleged retaliation is not actionable. *See Bridges,* 557 F.3d at 555 (retaliation claim was properly dismissed where allegations "do not lead to an inference that the retaliation would deter a person of ordinary firmness from exercising First Amendment activity in the future."); *West v. Grams,* 607 Fed. Appx. 561, 566 (7th Cir. April 22, 2015) (appeal of dismissal of retaliation claim was "patently frivolous" where the allegedly retaliatory acts "surely did not deter [plaintiff], who in the following two years submitted no less than 100 grievances"); *Long v. Harring,* No. 16-cv-779-SLC, 2018 WL 2464551 at *8 (W.D. Wis. June 1, 2018) (dismissed retaliation claim on summary judgment where plaintiff continued to file inmate complaints after the alleged retaliatory conduct occurred - he was in fact not deterred). "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise…." *Bart v. Telford,* 677 F.3d 622, 625 (7th Cir. 1982). In addition, Mr. Douglas had no right to be assigned to a particular cell, he was placed in another "C" job, and he did receive back pay and pay for the time he was eligible for a job while no job was available in accordance with IDOC policy. He cannot show that being denied the cell of his choice, something he was not entitled to, being given the same class job, and being paid the amount required by policy would deter a person of ordinary firmness from exercising First Amendment rights. More specifically, no reasonable jury could find that any of Ms. Reeves' conduct would deter a person of ordinary firmness from filing future grievances. Ms. Reeves is entitled to summary judgment on this basis alone.

Based on Mr. Douglas' amended complaint, Ms. Reeves points out that her allegedly retaliatory acts occurred after Mr. Douglas filed a grievance against her. *See* Dkt. 37 at 14

("Reeves took offence (sic) to my reversal and she began a chain of retaliatory acts that are all in connection to the initial false imprisonment sanction."). Mr. Douglas was placed on Ms. Reeves' wing of P Unit on March 23, 2016. It is undisputed that the alleged retaliatory acts include the denial of placing Mr. Douglas in his previous job on March 23, 2016, and denying him back pay from February 24, 2016, to March 23, 2016. His formal grievance against Ms. Reeves was filed on March 30, 2016, *after* the allegedly retaliatory acts occurred. A reasonable jury could not infer retaliation based on this chronology of events. *See Mays v. Springborn,* 575 F.3d 643, 650 (7th Cir. 2009) ("Mays presented a chronology of events from which retaliation could be inferred."); *Chatman v. Pierce,* 583 Fed. Appx. 548, 550 (7th Cir. Nov. 18, 2014) (reversed summary judgment on retaliation claim where plaintiff alleged "a chronology of events…and from those circumstances a retaliatory motive could be inferred"); *Turley v. Rednour,* 555 Fed. Appx. 606, 610 (7th Cir. Feb. 6, 2014) ("Thus, Turley cannot demonstrate a causal connection-required for First Amendment claims of retaliation-between his grievances and lawsuits and the move to protective custody."); *Kidwell v. Eisenhauer,* 679 F.3d 957, 966 (7th Cir. 2012) ("[t]o demonstrate the requisite causal connection in a retaliation claim, [a] plaintiff[] must show that the protected activity and the adverse action are not wholly unrelated.") (internal quotation omitted).

In response to the motion for summary judgment, Mr. Douglas attempts to expand the source of the retaliation to a grievance he filed earlier against another prison employee, which mentioned Ms. Reeves. Dkt. 114 at 10-11 (citing Ex. C1, dkt. 116-2). This prior grievance, however, is dated March 8, 2015, dkt. 116-2, and cannot reasonably be inferred to be a basis for retaliatory acts that occurred more than a year later.

It is undisputed that the March 30 grievance alleged that after Mr. Douglas' disciplinary conviction was reversed, Ms. Reeves refused to honor his request to place him back into the same job or a higher paying position "with the urgency it deserves." Dkt. 101-13. The Court agrees with Ms. Reeves that Mr. Douglas' reasoning is circular, in that he complained in his grievance about Ms. Reeves' failure to promptly enough place him in the job of his choice and reinstate his pay while at the same time he argues that Ms. Reeves retaliated against him for filing the grievance by not placing him in the job of his choice and not reinstating his pay.

Mr. Douglas asserts that from November 2013 to December 2015, *no* staff member at Wabash Valley ever offered him a job. Dkt. 115 at 5. He believes this was because he had a reputation for filing complaints against staff, having filed over 100 complaints. *Id.* He contends that he was overqualified for the job he first was given, a "C" class wheelchair pusher, in light of his having associate, bachelor and paralegal degrees. *Id.* at 4. Inmates, however, do not have a constitutional right to any prison job and this case is not about whether he was under or over qualified for any particular job. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991) (en banc).

In his response, Mr. Douglas also states that he was offered a class "A" Apprenticeship Program Recycling/Sanitation job by a sanitation supervisor on March 30, 2016, but that Ms. Reeves refused to contact the supervisor and told Mr. Douglas, "I'm going to give you the job I want you to have." Dkt. 115 at 4. Ms. Reeves replies that in accordance with IDOC policy, Mr. Douglas was only entitled to be "returned to [his] previous assignment eligibility status as soon as possible and shall be given priority for a work assignment." Dkt. 101-2 at 11. Mr. Douglas was previously assigned a "C" class job and he was given a "C" class job in accordance with IDOC policy and after Ms. Reeves inquired about vacancies with the case worker on the left

wing of P Unit. While Mr. Douglas' statement is evidence that Ms. Reeves did not want to contact the supervisor or help Mr. Douglas get the class "A" job, it is not evidence showing that she was motivated by the fact that Mr. Douglas had filed a grievance against her.

Similarly, the declaration of inmate Donald Mallard, dkt. 115-1, states that he overheard Mr. Douglas talking to Ms. Reeves in her office on an unspecified date, and that Mr. "Douglas was requesting a job and the property that she was confiscating, defendant Reeves kept saying, 'no, no you can't have that.' Plaintiff Douglas, abruptly stopped talking and walked out quickly past the line of prisoners which had increased." Dkt. 115-1 at 2-3. Again, even if for purposes of the motion for summary judgment this testimony is accepted as evidence that Ms. Reeves denied Mr. Douglas an unidentified job and some property, it does not constitute evidence of any *reason or motivation* for that denial.

In sum, Mr. Douglas has failed to present sufficient evidence to create a genuine issue of material fact on his claim of retaliation. After Mr. Douglas filed the formal March 30, 2016, grievance against Ms. Reeves, he was given a job in the same class (after Ms. Reeves asked another case worker about possible vacancies) and he received back pay in accordance with IDOC policy. This all occurred within a few weeks of when he became job eligible again. Although this did not happen as quickly as Mr. Douglas wanted, no reasonable jury could find that these circumstances would deter a person of ordinary firmness from filing grievances or other complaints in the future.

## IV. Conclusion

Defendant Faith Reeves is entitled to summary judgment on Mr. Douglas' claim of retaliation. Accordingly, her motion for summary judgment, dkt. [99], is **granted.** Judgment

consistent with this Entry and with the screening Entry of February 27, 2017, dkt. [38], dismissing other claims, shall now issue.

**IT IS SO ORDERED.**

Date: 7/2/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

MONWELL DOUGLAS
150812
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 W. South 250
Bunker Hill, IN 46914

Jill Esenwein
INDIANA ATTORNEY GENERAL
jill.esenwein@atg.in.gov

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov